IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSHUA CONRAD STAFF,

    Plaintiff,

v.                                                                                                                       CIV 17-0908 JHR

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiff Joshua Conrad Staff's Motion to Reverse and Remand to Agency for Rehearing with Supporting Memorandum, [Doc. 21], filed February 28, 2018. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned to conduct dispositive proceedings in this matter, including the entry of final judgment. [Docs. 5, 8, 12]. Having studied the parties' positions, the relevant law, and the relevant portions of the Administrative Record ("*AR*"), the Court grants Mr. Staff's Motion for the reasons set forth below.

### I)     INTRODUCTION

This Court's institutional role is to ensure that the Commissioner's decision to deny Social Security benefits is supported by the law and substantial evidence. In this case, the Commissioner failed to meet both standards when she discounted the medical opinion of consultative examiner Roger Felix, M.D., because she elevated non-examining source opinions over his and gave illegitimate reasons for rejecting his functional limitations. As such, the Court has no choice but to remand Mr. Staff's case for additional proceedings.

## II) BACKGROUND

Mr. Staff filed an application with the Social Security Administration for supplemental security income benefits under Title XVI of the Social Security Act on September 20, 2013. *AR* at 185-190. He alleged a disability onset date of August 6, 2013 due to "PTSD, Degenerative Disc Disease, Carpal Tunnel, High Blood Pressure, Anxiety, Insomnia, Acid Reflux [and] lypomas." *AR* at 185, 211. The Administration denied Mr. Staff's claim initially and upon reconsideration, and he requested a *de novo* hearing before an administrative law judge ("ALJ"). *AR* at 85-112.

ALJ Lillian Richter held an evidentiary hearing on February 4, 2016. *AR* at 33-84. On August 10, 2016, the ALJ issued an unfavorable decision, finding that Mr. Staff has not been under a disability from his alleged onset date through the date of her decision. *AR* at 8-32. In response, Mr. Staff filed a "Request for Review of Hearing Decision/Order" on September 16, 2016. *AR* at 174-177. After reviewing his case, the Appeals Council denied Mr. Staff's request for review on June 7, 2017. *AR* at 1-5. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20

C.F.R. § 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 416.920(a)(4).[1]

At Step One of the sequential evaluation process, the ALJ found that Mr. Staff has not engaged in substantial gainful activity since his alleged onset date. *AR* at 13. At Step Two, she determined that Mr. Staff has the severe impairments of "large right knee joint effusion and bipartite patella; degenerative disc disease of the cervical spine; carpal tunnel syndrome post surgery right hand; posttraumatic stress disorder; and depressive disorder[.]" *AR* at 13. At Step Three, the ALJ concluded that Mr. Staff's impairments, individually and in combination, do not meet or medically equal the regulatory "listings." *AR* at 14-16. Mr. Staff does not challenge these findings on appeal.

When a claimant does not meet a listed impairment, the ALJ must determine his residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1. In this case, the ALJ determined that Mr. Staff retains the RFC to:

> perform light work as defined in 20 CFR 416.967(b) except: he can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for six hours out of an eight-hour workday, with normal breaks. He can sit for six hours out of an eight-hour workday, with normal breaks. He is unlimited with respect to pushing and/or pulling, other than as indicated for lifting and/or carrying. He can frequently stoop and climb ramps and stairs. He can occasionally kneel, crouch, crawl and climb ladders ropes and scaffolds. He can frequently handle and finger with the right nondominant upper extremity. He is limited to

---

[1] The Tenth Circuit summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016):
> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulation.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

performing simple routine work and should not work in close proximity to others to avoid distractions. He can have occasional contact with supervisors, coworkers and members of the public. He is limited to a workplace with few changes in the routine work setting and is able to make simple work related decisions.

*AR* at 16.

Employing this RFC at Steps Four and Five, and relying on the testimony of a Vocational Expert, the ALJ determined that Mr. Staff is unable to perform his past relevant work as a grocery store cashier, retail cashier, short-order cook, fast food worker, or stocker. *AR* at 24. However, the ALJ found that there are jobs that exist in significant numbers in the national economy that Mr. Staff can perform despite his limitations. *AR* at 25. Specifically, the ALJ determined that Mr. Staff retains the functional capacity to work as a hand cleaner or laundry folder, despite his impairments. *AR* at 25. Accordingly, the ALJ determined that Mr. Staff is not disabled as defined in the Social Security Act, and denied benefits. *AR* at 26.

### III) LEGAL STANDARDS

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).

### IV) ANALYSIS

Mr. Staff argues that "[t]he ALJ erred by failing to evaluate properly the (RFC)." [Doc. 21, p. 5]. Specifically, he argues that the ALJ failed to properly evaluate the opinions of the non-examining state agency physicians, the consultative examiners, Drs. Flynn and Felix, and failed to properly evaluate his non-severe impairments when formulating the RFC. [*Id.* at 5-15]. Finally, Mr. Staff argues that the ALJ erred by failing to resolve a conflict between the

4

Vocational Expert testimony and the Dictionary of Occupational Titles. [*Id.* at 15-16]. Because the Court agrees that the ALJ erred when weighing Dr. Felix's opinion, it will not address Mr. Staff's other claims of error, "because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

Under law, "[i]t is the ALJ's duty to give consideration to all the medical opinions in the record. . . . [Sh]e must also discuss the weight [s]he assigns to such opinions." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citations omitted). The question in this case is whether the ALJ's weighing of Dr. Felix's opinion conformed with the legal standards applicable to "examining medical source opinions." *See Ringgold v. Colvin*, 644 F. App'x 841, 843 (10th Cir. 2016) (unpublished) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012); 20 C.F.R. §§ 404.1527(c)(1); 416.927(c)(1)). Such an opinion "may be dismissed or discounted, of course, but that must be based on an evaluation of all of the factors set out in the regulations and the ALJ must provide specific, *legitimate* reasons for rejecting it." *Id.* (emphasis added).

> When evaluating the opinion of any medical source, an ALJ must consider: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Kellams v. Berryhill*, 696 F. App'x 909, 917 (10th Cir. 2017) (citing *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995); 20 C.F.R. §§ 404.1527(c), 416.927(c)). For the reasons that follow, the Court is not convinced the ALJ correctly applied the law or that her reasons for discounting the weight she afforded to Dr. Felix's opinion are supported by substantial evidence.

First, the Court is not convinced that the ALJ's reasons were a proper application of the law. Here, the ALJ acknowledged that Dr. Felix is an acceptable medical source who examined Mr. Staff. As was recently reiterated by the Tenth Circuit, "an examining medical-source opinion is, … presumptively entitled to more weight than a doctor's opinion derived from a review of the medical record." *Kellams v. Berryhill*, 696 F. App'x 909, 917 (10th Cir. 2017) (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012)). Yet, in this case, the ALJ gave "significant weight" to the state agency medical examiners and consultants who merely examined Mr. Staff's medical records, while giving only "some weight" to the two doctors who examined Mr. Staff in person. While the Court finds little fault with the ALJ's assessment of the psychological consultative examiner, Dr. Flynn, the same cannot be said of her reasons for discounting Dr. Felix's opinion.

In giving only "some weight" to Dr. Felix's opinion, the ALJ reasoned that "[w]hile he is an acceptable medical source under the regulations and he has (sic) the opportunity to examine the claimant, many of his conclusions appear to be based solely on the claimant's subjective complaints." *AR* at 23. However, having examined Dr. Felix's report, the Court disagrees that his conclusions are based on Mr. Staff's subjective complaints. To the contrary, in his report Dr. Felix states that "*[b]ased on his exam*, [Mr. Staff] would be expected to have difficulty with lifting/pulling/pushing/carrying heavy loads with the right upper extremity, noting that he is left handed." *AR* at 294 (emphasis added). Dr. Felix went on to state that "*[b]ased on his exam*, he might be expected to have difficulty with lifting heavy loads frequently[,] … *[b]ased on his exam*, he might be expected to have difficulty with jobs requiring a large amount of squatting and stooping … [and] *[b]ased on his exam*, he would be expected to have difficulty with frequent repetitive movement of the right wrist, which might exacerbate his carpal tunnel

6

syndrome." *AR* at 294 (emphasis added). Thus, Dr. Felix did not rely solely on Mr. Staff's subjective complaints but, rather, his own examination findings. Therefore, the ALJ's reason for assigning less weight to his opinion is not supported by substantial evidence.

The ALJ continued, "[w]hile I did not find his opinion very persuasive, I have relied on his findings on examination. Where the residual functional capacity differs from the opinion offered by Dr. Felix, the differences weigh in favor of the claimant." *AR* at 23. The ALJ's first statement implies that she relied on Dr. Felix's examination findings. But, as demonstrated above, that simply isn't true. Instead, the ALJ discounted the weight she assigned to Dr. Felix's opinion because she believed his findings to be supported only by Mr. Staff's subjective complaints. *AR* at 23. The ALJ's second statement also proves to be false. Whereas Dr. Felix opined that Mr. Staff would have difficulty with *frequent* lifting with his right upper extremity, stooping, and repetitive movement of his right wrist, *AR* at 294, the ALJ's RFC finding states that he can *frequently* stoop and *frequently* handle and finger with the right nondominant upper extremity. *AR* at 16. In other words, the ALJ did not temper Mr. Staff's RFC in his favor, but differed significantly from Dr. Felix's opinion. Thus, the ALJ's weighing of Dr. Felix's opinion is not supported by substantial evidence.

The Commissioner argues that the ALJ's error was harmless, positing that the ALJ could have found Mr. Staff capable of constant (rather than frequent) stooping. [Doc. 23, pp. 12-13 (relying on *Keyes-Zachary* for the proposition that failure to properly weigh an opinion is harmless where it is consistent with the RFC)]. The Court disagrees that the ALJ's error was harmless. Dr. Felix opined that "[b]ased on his exam, [Mr. Staff] might be expected to have difficulty with jobs requiring a *large amount* of squatting and stooping." *AR* at 294 (emphasis added). This is not consistent with a RFC requiring "frequent" stooping. "Some stooping is

7

required to do any almost kind of work." POMS DI 25020.005. While "[o]nly occasional stooping and no crouching is required to perform most sedentary and light occupations[,]" *id.*, when used in a RFC, "occasional" "means that the activity or condition occurs at least once up to one-third of an 8-hour workday" whereas use of the term "frequently" "means that the activity or condition occurs one-third to two-thirds of an 8-hour workday[,]" and "constantly" "means that the activity or condition occurs two-thirds or more of an eight-hour day." POMS DI 25001.001. The ALJ certainly could not have assigned Mr. Staff an RFC that permits constant stooping without completely rejecting Dr. Felix's opinion, and frequent stooping (up to two-thirds of the workday) is not consistent with Dr. Felix's opinion that Mr. Staff is precluded from jobs requiring a "large amount" of stooping. In other words, the ALJ's error was not harmless.

The ALJ's error in weighing Dr. Felix's opinion renders the rest of her analysis unreliable. For example, the two jobs identified as within Mr. Staff's RFC in this case require frequent to constant bilateral handling. *See* DICOT 709.687-010 (hand cleaner), 1991 WL 679134; DICOT 361.587-010 (laundry folder), 1991 WL 672979. Yet, even the ALJ's own RFC limits Mr. Staff to frequent bilateral handling. *AR* at 16. And, if Dr. Felix's opinion is granted greater weight, Mr. Staff may be found to be even more limited. This is not to say that there are not jobs in the national economy that Mr. Staff can perform; however, without a proper RFC formulation by the ALJ, it is impossible to know if Mr. Staff is able to perform the two jobs identified by the ALJ here. *See Carr v. Comm'r, SSA*, 734 F. App'x 606, 611 (10th Cir. 2018) ("Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Commissioner's decision.").

## V) CONCLUSION

The ALJ elevated non-examining medical source opinions above that of an acceptable medical source that examined Mr. Staff – Dr. Felix. While this is acceptable in some cases, it was not here, where the ALJ failed to properly apply the law, and where her reasons for giving less weight to Dr. Felix's opinion are unsupported by substantial evidence.

Wherefore, IT IS THEREFORE ORDERED that plaintiff Joshua Conrad Staff's Motion to Reverse and Remand [Doc. 21] is GRANTED. The decision of the Commissioner is REVERSED and REMANDED for further proceedings consistent with this opinion.

_____
Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent